J-S18018-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| TIMOTHY SMITH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARTIN J. OSTAPOWICZ | : | |
| | : | |
| Appellant | : | No. 1373 MDA 2025 |

Appeal from the Order Entered September 29, 2025
In the Court of Common Pleas of Tioga County Civil Division at No(s):
0040-CV-2024

BEFORE:  DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.:           **FILED: AUGUST 10, 2026**

Martin J. Ostapowicz ("Ostapowicz") appeals from the order entered by the Tioga County Court of Common Pleas ("trial court") granting possession of real property to Timothy Smith ("Smith") following a nonjury trial on Smith's complaint in ejectment.  Ostapowicz argues that equitable principles preclude relief.  Upon review, we affirm.

Ostapowicz was the owner of real property in Morris Township, Tioga County (the "Property"), on which his home was situated.  On September 24, 2021, following Ostapowicz's repeated failure to pay real estate taxes, the Tioga County Tax Claim Bureau (the "Bureau") sold the Property at an upset tax sale to Smith for $83,000.[1]

_____

[1] The upset tax sale was conducted pursuant to the Real Estate Tax Sale Law ("RETSL"), 72 P.S. §§ 5860.101-5860.803.  As our Supreme Court observed
*(Footnote Continued Next Page)*

In a related case, Ostapowicz filed objections to that sale.[2]  He averred the Bureau failed to comply with notice requirements set forth in the RETSL and that the sale violated procedural and substantive due process.  *See Upset Sale*, 353 A.3d at 193.  Of relevance here, a hearing on Ostapowicz's objections elicited the following evidence:

> [T]he director of the Bureau and chief assessor for Tioga County, Joshua Zeyn, explained that Ostapowicz had a long history of failing to pay taxes on the Property, as the Bureau's tax history report indicated that Ostapowicz had been delinquent on his taxes every year since 2004.  Zeyn further testified that, contrary to Ostapowicz's assertions, the Bureau fully complied with the notice and service requirements of the RETSL.  Specifically, with respect to Section 5860.602(e), which sets forth the written notice requirements, Zeyn indicated that, on March 3, 2020, the Bureau sent Ostapowicz, by restricted mail, a Notice of Return and Claim, which provided Ostapowicz with information regarding the amount of taxes and interest due on the Property through March 31, 2020, and advised him of the consequences of nonpayment, but that the notice was returned to the Bureau as undeliverable.
>
> Zeyn also testified that, on July 14, 2021, the Bureau sent Ostapowicz, by restricted mail, a Notice of Public Tax Sale,

---

in a prior, related decision to this matter, "When a property is offered for sale at an upset tax sale due to the owner's failure to pay taxes, the 'upset price' represents 'the total sum of the taxes owed plus any tax liens and municipal claims.'"  *In re Upset Sale, Tax Claim Bureau of Tioga Cnty., Control No. 012488*, 353 A.3d 191, 193 n.3 (Pa. 2026) (hereinafter, "*Upset Sale*") (citing *In re Adams Cnty. Tax Claim Bureau*, 200 A.3d 622, 623 n.1 (Pa. Cmwlth. 2018); 72 P.S. § 5860.605).  The upset price for the Property at the time of the sale was $11,416.14.  *Upset Sale*, 353 A.3d at 193.  According to Ostapowicz, the $83,000 sale price was approximately 18 percent of the Property's fair market value of $465,000.  *Id.*

[2] Ostapowicz's objections were docketed in the trial court at No. 606 CV 2021 (the "Related Case").  The trial court granted Smith intervenor status in the Related Case.  *Upset Sale*, 353 A.3d at 193.

advising him that an upset tax sale was scheduled for the Property at 10:00 a.m. on September 24, 2021. The Notice of Public Tax Sale informed Ostapowicz that he had until July 30, 2021 to pay, or set up an agreement to pay, the Property's outstanding taxes in order to avoid advertisement of the upset tax sale. The notice contained the following warning: "Your property is about to be sold without your consent for delinquent taxes. Your property may be sold for a small fraction of its fair market value." However, the notice was returned to the Bureau as unclaimed, and, as a result, the Bureau completed a proof of mailing on September 10, 2021, documenting that it had mailed the notice to Ostapowicz.

Zeyn testified that, on September 8, 2021, the Bureau mailed Ostapowicz a Final Notice, once again informing him of the outstanding tax balance on the Property, and the scheduled date and time of the upset tax sale. The Final Notice advised Ostapowicz that he had until 3:30 p.m. on September 23, 2021 to pay the Property's outstanding 2019 taxes in order to avoid the upset tax sale. The Final Notice was not returned as undeliverable.[FN]

> [FN] In addition to the notices described above, Zeyn testified that the Bureau sent Ostapowicz several notices regarding the Property's outstanding taxes and the scheduled upset tax sale that were not expressly required by the RETSL. Specifically, Zeyn recounted that, on February 4, 2020, the [Bureau] sent Ostapowicz a notice informing him that his 2019 property taxes were delinquent; on November 5, 2020, the Bureau mailed Ostapowicz an Open Billing Letter, which detailed the Property's outstanding taxes for 2019, and described the available payment options and instructions for seeking an agreement to stay the sale (in actuality, Ostapowicz was not eligible to enter an agreement to stay the sale because he previously defaulted on such an agreement in connection with the Property's 2018 delinquent taxes); and, on April 1, 2021, the Bureau sent Ostapowicz a notice which advised him of the amount of his outstanding tax liability for the Property, and informed him of his payment options, the due dates for payment, and the consequences for nonpayment. The first two notices were returned to the Bureau as undeliverable, and the Bureau received no response from Ostapowicz with respect to the third notice.

Additionally, Zeyn testified that notice of the scheduled upset tax sale was physically posted to Ostapowicz's Property by a processing agent, Evelyn Laughlin, on June 14, 2021, as required under Section 5860.602(e)(3) of the RETSL. He also explained that Laughlin attempted to personally serve notice to Ostapowicz, as required under Section 5860.601(a)(3), on June 14 and June 17, 2021, but was unsuccessful. However, Laughlin succeeded in serving notice to Ostapowicz on June 18, 2021. Zeyn's testimony in this regard was supported by the deposition testimony of Laughlin, which was admitted into evidence. In her deposition, Laughlin attested that she posted the Property on June 14, 2021 by placing a notice on a wire stake, which was secured by two holders, at the end of the Property's driveway, as the house was not visible from the road. Laughlin explained that the posted notice was not obscured by bushes or trees, and was conspicuous from the road and upon entering the Property, and that she took a picture of the posted notice, which became part of the Bureau's field report. Laughlin also confirmed that she unsuccessfully attempted to personally serve notice on Appellant twice before she was successful in doing so on June 18, 2021.

Finally, Zeyn relayed that Ostapowicz contacted the Bureau by telephone on September 1, 2021, to inquire as to the amount of payment required to avoid the upset tax sale. Ostapowicz was informed that he needed to pay $2,595.50 in certified funds prior to 3:30 p.m. on September 23, 2021, in order to halt the sale. Ostapowicz, however, failed to make payment.

In response to the evidence offered by the Bureau, Ostapowicz testified that he never saw the posted notice at the Property, did not see the advertisement of the upset tax sale in any publication, did not recall receiving any notices about the sale, and was not made aware of the impending sale from anyone who used the Property's driveway. Ostapowicz further claimed that he did not recall being personally served with notice of the upset tax sale on June 18, 2021, alleging that he first learned of the scheduled sale from his real estate agent on September 24, 2021, the day of the sale. According to Ostapowicz, at that time, he went directly to the Bureau with money to pay the delinquent taxes, but was told that he was too late, and that the Property had been sold. Ostapowicz also presented testimony from his son and daughter, as well as an employee, all of whom stated that they used the Property's driveway multiple times per week, but never saw the posted notice at the end of the driveway.

*Upset Sale*, 353 A.3d at 193-95 (party designation altered; record citation and some footnotes omitted).

In denying Ostapowicz's objections, the trial court expressly credited the testimony of Zeyn and Laughlin and found Ostapowicz's testimony not to be credible. *Id.* at 196. Our Commonwealth Court affirmed. *In re Upset Sale, Tax Claim Bureau of Tioga Cnty., Control No. 012488*, 305 A.3d 1118 (Pa. Cmwlth. 2023). Our Supreme Court granted Ostapowicz's petition for allowance of appeal to determine whether the lower courts "erred in affirming a county tax sale of real estate where the successful bid at the sale of the home was approximately 18 percent of its appraised fair market value." *Upset Sale*, 353 A.3d at 197 (brackets, quotation marks, and citation omitted).

On January 21, 2026, our Supreme Court affirmed, finding no trial court error when it denied Ostapowicz's petition to set aside the upset tax sale of the Property. *Id.* at 207. It first held that Ostapowicz was "not entitled to relief based on his claim that the Bureau's failure to properly post the Property and personally serve him with notice constituted irregularities or illegalities in the proceedings" pursuant to section 5860.607(d)[3] of the RETSL because the

---

[3] Section 5860.607(d) provides:

> Any objections or exceptions to such a sale may question the regularity or legality of the proceedings of the bureau in respect to such sale, but may not raise the legality of the taxes on which

*(Footnote Continued Next Page)*

trial court's findings, including its credibility determinations, were supported by the evidence. *Id.* at 201. It further held that Ostapowicz's "claim of an inadequate sale price does not constitute an irregularity or illegality in the proceedings" and "may not be challenged" under section 5860.607 of the RETSL. *Id.* at 205. Finally, our Supreme Court rejected Ostapowicz's argument that "even absent any irregularities in the upset tax sale, the trial court should have set aside the sale of the Property based on principles of equity," and held he could not "raise an equitable challenge to the sale price of the Property under the RETSL." *Id.* at 205-06. It determined that "upset tax sales are governed exclusively by the RETSL" and that "[a]bsent an irregularity or illegality in the sale proceedings that is tied to the allegedly inadequate sale price of a property, the RETSL does not permit a landowner to seek equitable relief based on the sale price, regardless of the ratio of the sale price to a property's fair market value." *Id.* at 207.

In the event Ostapowicz could raise an equitable challenge, our High Court determined he would not be entitled to relief:

> Even assuming, *arguendo*, that the trial court was permitted to exercise its equitable powers to set aside the sale of the Property because the Bureau's action in allowing the Property to be sold for what [Ostapowicz] believes was inadequate consideration was

the sale was held, of the return by the tax collector to the bureau or of the claim entered. In case any objections or exceptions are filed they shall be disposed of according to the practice of the court. If the same are overruled or set aside, a decree of absolute confirmation shall be entered by the court.

72 P.S. § 5860.607(d).

> "arbitrary or capricious," … we again observe that, aside from posing a rhetorical question, [Ostapowicz] fails to identify *how* the Bureau's actions were arbitrary or capricious. Indeed, the evidence demonstrated that, for years, [Ostapowicz] failed to timely pay his property taxes, and the Bureau took numerous steps, including steps beyond those required by the RETSL, to afford [Ostapowicz] opportunities to set up a payment plan and avoid an upset tax sale. We find no basis to conclude that the Bureau acted arbitrarily or capriciously.

*Id.* at 206 n.13.

On January 25, 2024, while the Related Case was pending, Smith filed a complaint in ejectment against Ostapowicz in the instant matter. Ostapowicz filed an answer and new matter, asserting his right to possession and ownership of the Property and that under equitable principles, Smith was not entitled to relief because granting him possession "would amount to a forfeiture of the sum total of Ostapowicz's material wealth, i.e., approximately $500,000 for which the most he will receive is approximately 18 percent" and "equity abhors such a forfeiture." Answer and New Matter, 4/18/2024, ¶¶ 5, 11. Smith's reply denied that Ostapowicz could raise an equitable challenge to the ejectment action.

Following the denial of Smith's motion for summary judgment, the trial court held a nonjury trial on May 14, 2025. On May 27, 2025, the trial court granted Smith's complaint and request for possession. The court held argument on Ostapowicz's motion for post-trial relief on August 6, 2025, denying the motion on September 29, 2025. On October 3, 2025, Ostapowicz filed a notice of appeal and an application for stay pending appeal. The trial

court entered judgment in favor of Smith and issued a writ of possession on October 22, 2025.[4] On November 5, 2025, the trial court granted the stay until our Supreme Court issued a decision in the Related Case.[5] Both the trial court and Ostapowicz complied with the mandates of Rule 1925 of our Rules of Appellate Procedure.

Ostapowicz raises the following issues for our review:

1.    In the context of an ejectment action which is subject to the application of equitable principles, did the trial court err in granting a successful real estate tax sale bidder's request for possession of landowner's home when bidder's title is based on a tax sale wherein the successful bid was a minuscule fraction of the fair market value of landowner's property?

2.    Did the trial court err when it granted [Smith] possession of landowner's home based in part upon application of the doctrine of res judicata, when there was no identity of the thing sued upon, no identity of the cause of action, no identity of the persons or parties to the other action?

_____

[4] A prior writ of possession issued by the trial court on October 2, 2025 was stricken because judgment had not yet been entered.

[5] On January 20, 2026 and February 18, 2026, respectively, Ostapowicz filed in this Court two applications seeking to stay execution of the writ of possession. This Court dismissed as moot the first application because the Related Case had concluded. We denied the second application because Ostapowicz "fail[ed] to make a strong showing of a likelihood of success on the merits" as he "fail[ed] to provide any legal basis to support his continued occupancy or possession" of the Property. Order, 3/27/2026 (citing *Pennsylvania Pub. Util. Comm'n v. Process Gas Consumers Grp.*, 467 A.2d 805, 808-09 (Pa. 1983) (holding that petitioner seeking stay pending appeal must make strong showing of likelihood to prevail on merits; that without requested relief, petitioner will suffer irreparable injury; that issuance of stay will not substantially harm other interested parties in proceedings; and that issuance of stay will not adversely affect public interest)).

Ostapowicz's Brief at 5 (suggested answers omitted).

Ostapowicz argues two equitable defenses apply to Smith's ejectment action. *Id.* at 10, 14-19. First, he contends that the principle "equity abhors a forfeiture" applies because selling the Property for a fraction of its value constituted a forfeiture. *Id.* at 10, 14-18. Second, Ostapowicz argues that the "longstanding tradition of equity reviewing acts of public officials wherein it is alleged that they have acted arbitrarily, capriciously[,] or in violation of the law" applies here. *Id.* at 18. According to Ostapowicz, the Bureau's officials acted arbitrarily and capriciously in selling the Property for $83,000 when it was valued at $465,000. *Id.* at 10-11, 18-19. He seeks a remand for the trial court to make findings regarding his alleged forfeiture and the acts of the Bureau's officials. *Id.* at 11, 18-19.

Preliminarily, we observe that Ostapowicz did not raise any issues regarding forfeiture or the nature of the acts of the Bureau's officials in his concise statement of errors complained of on appeal; therefore, these claims are waived. *See* Pa.R.A.P. 1925(b)(4)(vii) (stating issues not included in a Rule 1925(b) statement are waived); *Downingtown Area Sch. Dist. v. Chester Cnty. Bd. of Assessment Appeals Tax Parcel No.: 33-5-43.3*, 356 A.3d 802, 824 n.27 (Pa. 2026) (same).

Even if preserved, Ostapowicz is not entitled to relief. We review appeals from bench trials according to our well-settled standard of review:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are

supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of the jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Reading Blue Mountain & N. R.R. Co. v. Mount*, 347 A.3d 53, 61 (Pa. Super. 2025) (quotation marks and citation omitted).

"Ejectment is an action filed by a plaintiff who does not possess the land but has a right to possess it, against a defendant who has actual possession." *Lazy D. Mobile Home Estates v. Vankavelaar*, 350 A.3d 266, 268 (Pa. Super. 2025) (quoting *Siskos v. Britz*, 790 A.2d 1000, 1006 (Pa. 2002)). "Ejectment is 'a possessory action only, and can succeed only if the plaintiff is out of possession, and if he has a present right to immediate possession.'" *Lazy D. Mobile Home Estates*, 350 A.3d at 268-69 (quoting *Siskos*, 790 A.2d at 1006) (emphasis omitted). "The crux of an ejectment action, therefore, rests with the plaintiff['s] ability to identify, by a preponderance of the evidence, the boundaries of a parcel of land to which they are out of possession but for which they maintain paramount title." *Reading Blue Mountain & N. R.R. Co.*, 347 A.3d at 61 (quotation marks and citation omitted).

Both parties testified at the nonjury trial on May 14, 2025. Smith stated that he attended the upset tax sale on September 21, 2021, bid on the Property along with approximately ten other bidders, was the highest bidder, and purchased the Property for $83,000. N.T., 5/14/2025, at 14-16. He also presented, and the trial court admitted, inter alia, (1) the legal description of the Property, which showed it was conveyed to Smith by deed recorded on November 14, 2023; (2) the upset tax sale certification, which indicated Ostapowicz as the former owner, the upset sale price of $11,416.14, the sale date of September 24, 2021, the sale price of $83,000, and Smith's signature, which he confirmed as his; and (3) the deed to the Property, recorded on November 14, 2023, which indicated Smith as the grantee. *Id.*, at 15-16, 19-21 Exs. A (legal description), B (sale certification), E (deed). Ostapowicz testified that he owned the Property since approximately 1978, built a one-bedroom log home on it, and had a two-car garage, horse barn, and camp on the Property. *Id.* at 31-34.

In its opinion, the trial court found Smith "presented sufficient evidence to demonstrate his superior title [to] the [Property] over [Ostapowicz]." Trial Court Opinion, 11/24/2025, at 4. It further noted that the validity of Smith's title by way of the upset tax sale was affirmed by the Commonwealth Court.[6] *Id.*

---

[6] At the time the trial court issued its Rule 1925(a) opinion on November 24, 2025, the Related Case was still pending before our Supreme Court.

We discern no error in the trial court's grant of possession of the Property to Smith. Viewing the evidence in the light most favorable to Smith, the record reflects that Smith produced evidence which showed, by a preponderance of the evidence, the boundaries of the Property, his title to it, and that he was out of possession. Therefore, the trial court's determination that Smith has an immediate right to possession of the Property is supported by competence evidence. *See Lazy D. Mobile Home Estates*, 350 A.3d at 268-69; *Reading Blue Mountain & N. R.R. Co.*, 347 A.3d at 61.

In his brief before this Court, Ostapowicz reiterates the same contentions he raised in the Related Case: that the upset tax sale was invalid because the sale price was inadequate and the Bureau acted arbitrarily and capriciously by failing to comply with notice requirements under the RETSL and accepting an inadequate price. *See* Ostapowicz's Brief at 8-19. As we explained in detail above, our Supreme Court held there was no basis to set aside the sale of the Property. In holding Ostapowicz could not raise an equitable challenge to the sale price of the Property under the RETSL, the *Upset Sale* Court emphasized that "when parties' rights are regulated and fixed by a comprehensive scheme of legislation, the maxim 'equity follows the law' is entitled to the greatest deference." *Upset Sale*, 353 A.3d at 206 (citation and some quotation marks omitted). Because "upset tax sales are governed exclusively by the RETSL," Ostapowicz could not seek "equitable relief based on the sale price, regardless of the ratio of the sale price to a

property's fair market value." **Id.** at 207. Thus, even if preserved, Ostapowicz's attempt to collaterally attack the validity of the upset tax sale via this ejectment action would warrant no relief as the RETSL is the sole mechanism for doing so.

Ostapowicz fully availed himself of that statutory remedy when he challenged the validity of the upset tax sale, upon which Smith's title to the Property rests, in the Related Case. Additionally, our Supreme Court determined that the trial court's finding that the Bureau gave proper notice of the sale was supported by the record, and there was no basis to conclude that the Bureau acted arbitrarily or capriciously. **Id.** at 201, 206 n.13.

Nevertheless, in his second issue, Ostapowicz argues the trial court erred in determining res judicata precluded relief in this ejectment matter. Ostapowicz's Brief at 11-13, 19-22. He contends that the parties and causes of actions are different from the Related Case, rendering the doctrine of res judicata inapplicable. **Id.**; **see also** Trial Court Opinion, 11/24/2025, at 3-4 (stating res judicata applied where Ostapowicz's appeal was pending in **Upset Sale**).[7]

"Whether an action is barred by res judicata is an issue of law subject to this Court's plenary, de novo review." **Heart Care Consultants, LLC v. Albataineh**, 239 A.3d 126, 132 (Pa. Super. 2020) (citation omitted).

---

[7] **See supra**, note 6.

"[U]nder the doctrine of res judicata, a final judgment on the merits by a court of competent jurisdiction bars a later suit on the same cause of action between the same parties." *Id.* (citations omitted). "For res judicata to apply, the two actions must have (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the capacity of the parties." *Id.* (citations omitted).

We need not examine the question of whether the parties and causes of action in the Related Case differed, as Ostapowicz asserts, such that res judicata did not apply, because the doctrine of collateral estoppel unquestionably bars his claims in the ejectment action.[8] Collateral estoppel, which is subsumed by the doctrine of res judicata, "operates to prevent a question of law or issue of fact which has once been litigated and fully determined in a court of competent jurisdiction from being relitigated in a subsequent suit." *Spisak v. Edelstein*, 768 A.2d 874, 876-77 (Pa. Super. 2001) (quotation marks and citation omitted); *Khalil v. Cole*, 240 A.3d 996, 1001 (Pa. Super. 2020) (citation omitted).

> It applies where (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is

---

[8] "[A]s an appellate court, we may affirm the judgment of the lower court where it is correct on any legal ground or theory disclosed by the record, regardless of the reason or theory adopted by the trial court." *Layton-Herron v. Litke*, 352 A.3d 510, 520 n.7 (Pa. Super. 2026) (citations, quotation marks, and brackets omitted).

- 14 -

asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

***Spisak***, 768 A.2d at 877 (quotation marks and citation omitted).

Collateral estoppel bars Ostapowicz from relitigating the validity of the upset tax sale in this ejectment action because (1) the issue presented herein is identical to that decided in ***Upset Sale***, i.e., whether the upset tax sale was valid where the successful bid was approximately 18 percent of the Property's fair market value; (2) there was a final judgment on the merits, ***see Upset Sale***, 353 A.3d 191; (3) Ostapowicz was the party against whom the claim has already been finally decided in the Related Case; (4) Ostapowicz had a full and fair opportunity to litigate the issue—all the way to our Supreme Court—in ***Upset Sale***; and (5) that determination in ***Upset Sale*** was essential to the judgment. As such, Ostapowicz is precluded from relitigating the same issue here. ***See Spisak***, 768 A.2d at 876-77.

For the foregoing reasons, Ostapowicz failed to provide any legal basis to support his continued occupancy or possession of the Property. Accordingly, we affirm the trial court's order granting Smith possession of the Property.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/10/2026